Thank you. Mr. Myers? May it please the court, Rob Myers for Tracy Zornes. Your honors, Mr. Zornes' right to a public trial was violated when the state trial court ruled that the 100, the artificially bloated and inflated 167 members of the witness list were excluded from voir dire. The Minnesota Supreme Court's following appellate decision that Zornes' public trial right was not violated by the exclusion of those 167 people is contrary to and an unreasonable application of clearly established federal law. Waller and Presley require that the Waller test be employed before any closure. And the Minnesota Supreme Court did not... Well counsel, counsel, you want us to overrule our partial closure distinction, which of course this panel can't do. And Waller does not address partial closure. And so it seems to me your big hurdle here is the Woods case and followed by our Garcia case, which is exactly what Judge Tostrud applied. That is a 2254 D1 includes only the opinions. And it can't be contrary, the state Supreme Court can't be contrary if none of our cases confront the specific question presented. So if you can't, if you can't somehow avoid that, those clear statements, I don't see how you can prevail. Well, respectfully, your to any closure at any stage of a criminal proceeding. They don't say complete closure. So I think that the Supreme Court precedents compel that conclusion. And I would disagree slightly with your honor that those statements are dicta in a Seminole tribe of Florida versus Florida. The Supreme Court said, quote, when an opinion issues for the court, it is not only the result, but also those portions of the opinion necessary to that result by which we are bound. Was that an opinion discussing 2254 D1? There's dicta, what you just said, there's dicta like that all over the map. But the Supreme Court in Woods is specifically addressing the limitations of AEDPA. I agree that AEDPA is a high hurdle. And I do think that this court's partial closure jurisprudence is incorrect. I don't think that that follows the holdings of Waller and Presley, as I've just articulated that. Because I think the I think those are the core. You've preserved that for in-bank review. Let's not, let's not try, you waste the panel's time on your own, arguing what's an in-bank issue only. Okay, well, I mean, I respectfully, your point is well taken, but I think that this court's jurisprudence on partial closures is mistaken. And I think the logic of, I mean, to the extent that any doubt about the reach of Waller existed after Waller, Presley cleared away any of that doubt. Waller applied the Waller test, the four-pronged test, which is now called the Waller test from the press enterprises to suppression hearings, closures of suppression hearings. And Presley then applied that principle to voir dire. But crucially, it said that the Sixth Amendment public trial right extends beyond the actual proof at trial. It's not just limited to the actual proof at trial. And then they said, therefore, the four-pronged Waller test applies the standards to, sets forth the standards that courts must apply before closure at any stage of a criminal proceeding. So, you know, I think that Waller and Presley are clear. Obviously, my interpretation is different than this court's interpretation, which says there's a different test for partial closures. I recognize that. But my argument... Excuse me, counsel. Does this mean that every time a trial judge sequesters a witness, it has to run through the Waller four-pronged test? Well, first off, I don't think Waller is incredibly burdensome. I mean, in fact, the second prong of Waller is... Please answer the question first and then I'll resume the argument. Yeah, yes. I think that you need to justify... I mean, it depends on what stage we're talking about. So you're talking about sequestering witnesses during voir dire or during when? Well, you just said it's the whole process. So I'm including both. Okay. Yes, I think the trial court would need to do that. I don't think that that is a burdensome task on the trial court because the second prong of Waller is that the closure must be no broader than necessary to protect the interest. So obviously, if you're just sequestering trial witnesses, that is a less serious closure. No one would dispute that. So if that's right, then Waller overruled centuries of trial practice. No. Implicitly and... Pardon? No, I disagree. Waller doesn't say that you can't do those things, right? The argument isn't that those things are improper under Waller. Waller allows for total closure. Waller allows for partial closure. You just need to justify it. And it's not... It would be... But you have to write an opinion and you have to explicitly explore alternatives? I don't know that you need to produce a written opinion. I don't understand why oral comments by the judge on the record would not be sufficient. Nothing in Waller says that a written opinion is required. I mean, judges all the time make rulings from the bench orally. So no, I disagree that a written opinion would be required. I think that the whole point is that the public trial right is vital. The framers viewed it as an essential check on tyranny, on misuse of the judicial process. It's one of a lot of structural error that's not subject to harmless error analysis. It is an extremely important thing. And so I think in keeping with that importance, the Waller test was crafted to apply to any closure and pressly said at any stage of the criminal proceeding. And I don't think it's hard to justify minimal closures. The smaller the closure is, the less justification that's required. I mean, that's in the Waller test itself, the second prong. And in fact, I think that's an additional reason suggesting why Waller reaches partial closures. The second prong itself, says the closure must be no broader than necessary. That certainly encompasses a sliding scale of closures from complete closures to less than complete closures. So I would offer that as an additional reason why I think the distinction between complete and partial closures is incorrect. Moreover, another point that I would make is when you drill down into the facts of pressly, I think the facts of pressly are remarkably similar here. I'll acknowledge that pressly, when you read the Supreme Court opinion, is presented as a total closure. But when you drill down into the state court opinions and the brief of the government, it does not appear to be a total closure. In fact, the trial court said, I'm not excluding the public. And the government, and it's an appellate brief at the state court level, said this was a partial It was the uncle. In fact, it was very similar. Zorin submitted, the state claimed that there was no record evidence for this, but there is. It's on page 66A of my appendix. There is a letter from Zorin saying that the exclusion of McPherson and Stivers resulted in clearing the courtroom completely twice because they were the only people there. So it's remarkably similar to pressly because the uncle was the only person there. Well, the fact that the public wasn't interested in the voir dire, it was open to the public, right? Except for Stivers was sequestered, if you will, physically. But the public was not otherwise excluded, was it? Right. But you could say the same thing about pressly. In fact, the trial court said, I'm not excluding the public. He excluded one person. He happened to exclude the only person that was there. I mean, I think it's a very slippery slope to say, it's okay to exclude everyone that's there as long as there's a theoretical right of the public to attend. Because now you've done an end run around Waller. You can transform anything into a partial closure, right? There's 50 people there. You can say, I'm excluding you 50. I'm not excluding the public, just you 50. Okay. Well, now there's no one there. And now you've gutted the public trial, right? Because the whole point is not just that someone could come, but that if there are people there, they can serve those salutary effects that Waller discussed, ensure that judges and the jury, I'm sorry, not judges and the jury, judges, well, the jury too, I suppose, judges, jury, and the prosecutors recognize the momentous task they're given, that they exercise their duties with proper care and responsibly, that it ensures that the public has confidence in the fairness of the trial, that the defendant is not unjustly condemned or harshly treated, that the public has confidence in the judicial process. So, I mean, if you're going to go down the line of saying, well, the public can theoretically attend, then if I'm a district court and I don't want anyone there, I just say, I'm excluding the under the logic you're articulating and you've gutted the right. I mean, I think that's an additional reason why my interpretation of Waller and Presley are better than the interpretations relying on drawing a legally significant distinction between the tests applied for complete closures and partial closures. And I recognize that my argument is contrary to your precedent, but nevertheless, that is my argument. And, you know, the magistrate judge, although the magistrate judge issued an R&R recommending that I lose, she agreed that my argument was the better interpretation of Waller and Presley. I see that I'm coming up on my rebuttal time. Are there other questions? Well, your end run argument doesn't seem to match with the facts of this case. The judge only said he was excluding witnesses. He didn't say, if other people show up who are non-witnesses, I'm going to keep them out. That's true. That's true. But it still had the effect of clearing everyone who was there on two occasions. Well, that's a different point than it allows a closure if you kick out the 50 people who were here. And, you know, you're correct, your honor. I think that my end run argument applies as an additional reason why my interpretation of Waller and Presley is better than the interpretation of saying those cases only deal with complete closures and we need an entire different legal regime and a different standard for partial closures. I think you're absolutely correct. The end run argument is not exactly what happened here. I think the end run argument applies to bolster my interpretation of Presley and Waller being better than the interpretation that different tests should be applied for partial closures. Counsel, do we, are you including the exclusion of the victim's brother under this umbrella? Well, I mean, I thought that I thought the defendant asked that that be done. Yeah, certainly, you know, there are facts suggesting that of the record, and I think that is an additional hurdle. I think the analysis employed by the Minnesota Supreme Court in looking at the sequestering or exclusion or whatever you want to call it of Stivers, Cadet's brother, is completely orthogonal to Supreme Court precedent. So the Minnesota Supreme Court did not say, well, there was no objection, and so it was fine, right? The Minnesota Supreme Court said, well, it's trivial, and it's trivial because there's administrative proceedings that, you know, don't really matter. And actually, if you drill down, if you look at the Smith decision from the Minnesota Supreme Court or Lindsay, where they kind of unpack more their roots of this triviality exception or the administrative exception, one of their big base justifications for it is that these other things that they characterize as trivial or administrative don't implicate the trial court's fact-finding function, and therefore, they're different, and therefore, they don't, preventing exclusion in those contexts doesn't serve the salutary purposes that Waller identified. But of course, that's completely undercut by Presley, because Presley said that the Waller test applies to voir dire. Voir dire doesn't implicate any fact-finding function. No fact-finding occurs during voir dire. So, I mean, that doesn't even make sense under governing Supreme Court precedent. So I agree with your honor, the fact that the defense requested it certainly raises the burden on my argument. Nonetheless, the Minnesota Supreme Court's analysis is completely flawed and contrary to an unreasonable application of the governing test, as I see it. Why not a waiver? With regard to Stivers, why didn't the defense waive that so we have more than plain error review and habeas review? Well, I mean, a waiver under ALANA requires an intentional relinquishment of a known right. I would characterize that more as a forfeiture or invited error, but because I don't think that there was a colloquy with the district court when that occurred of you realize you're forfeiting your public trial right and things like that. So in my book, that's very different than other classic waivers, like in a plea where you have the trial court say, you understand by pleading guilty, you're giving up the right to testify in your own defense if you want. You're giving up a right to be tried by the jury of your peers. You're giving up a right to have called witnesses, cross-examine, things like that. I think that the I think waiver is a special term of art and I don't think the intentional relinquishment of a known right was met in this case. So I would not say that it was a waiver. I would say that it was more akin to a forfeiture or perhaps invited error or something like that. All right, Mr. Stockmeyer. Thank you. And may it please the court, Ed Stockmeyer on behalf of APELI. At no point during appellants or the jury selection portion of appellant's trial was the courtroom closed. The trial court issued a routine sequestration order applicable only to trial witnesses. It enforced that order against a single trial witness who appeared in the courtroom one morning and it granted the defense's request to move a member of the victim's family member to a room where that family member could observe jury selection. Those circumstances did not infringe on Mr. Zorns' Sixth Amendment right to an open courtroom and Waller does not apply. This court should affirm the denial of habeas relief because Mr. Zorns simply cannot satisfy APELI's demanding standard under section 2254 D1. The easiest way to reach that conclusion is to apply the threshold requirement that is baked into section 2254 D1 and that is the existence of applicable clearly established federal law. A state court cannot be said to have contradicted or unreasonably applied clearly established federal law which does not exist. So in this case we have a what was a partial closure of the courtroom at the very worst. I'm not even sure it can be called a closure but at the very worst it was a partial closure and in Garcia v. Birch this court held that Waller is not clearly established federal law in the habeas context with respect to partial closures of the courtroom and that's all that this court needs to dispose of this appeal. The Minnesota Supreme Court cannot be said to have contradicted or unreasonably applied clearly established federal law because there is no clearly established federal law in the habeas context with respect to partial closures of a courtroom. I do also want to touch briefly on Mr. Zorns' argument about sequestration. The argument is that sequestration triggers a Waller analysis. There's no precedent from the United States Supreme Court reasonably supporting that position and in itself that's enough to reject the argument I think. But I'd also like to point out that this argument would actually be a pretty radical departure from settled law. Again the argument is that Waller's four-factor analysis which importantly requires narrow tailoring to fit a compelling interest, that that sort of analysis applies to any sequestration of witnesses and that includes ordinary sequestration during the trial itself. And so I think if we're asking appellate courts to scrutinize sequestration orders by asking whether they were narrowly tailored, whether there was a compelling interest, whether that compelling to be affected by the circumstances, that's really nothing other than a complete negation of what we have all understood to be the trial court's discretion to sequester witnesses from the courtroom. So again I think that's a radical departure from settled law and it's certainly not the sort of settled legal principle ordinarily required to grant a habeas petitioner Finally, with respect to the victim's brother, I think this court can easily dispose of that issue. This was a single witness. The defense asked for him to be removed from the courtroom and he was removed to a room where he could observe the proceedings. There's simply no reasonable or principled basis to conclude that that was a closure of the courtroom infringing on Mr. Zorn's Sixth Amendment rights. So ultimately I think whatever angle this court chooses to take on this case, whether it's the partial closure issue or looking more specifically at the... Was the brother even a witness? Originally he was listed as a trial witness. The state agreed to remove him from the witness list but the defense then asked that he nevertheless be removed to an observation room. So the call down so I was a little confused on the record why he was still being sequestered but the defense's request persisted and the Minnesota Supreme Court found that that was a defense request. So again you know I think whatever angle this court takes on the case, sequestration, partial closure, the victim's brother, the outcome and legal analysis are the same. There's simply no clearly established federal law reasonably supporting Mr. Zorn's habeas claim and so this court should affirm the denial of habeas relief. More than happy to answer any additional questions the panel might have. Otherwise I'll forego the remainder of my time and simply ask that this court affirm the district court. Thank you. Very good. Well the case has been thoroughly briefed and the issues have been well addressed and squarely addressed this morning and so we will take the case under advisement.